**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------

**THE GREAT EASTERN SHIPPING CO., LTD.,**

        **Plaintiff,**

   - against -

**BINANI CEMENT LIMITED,**

        **Defendant.**
------------------------------------

**09 Civ. 6141 (JGK)**

**OPINION and ORDER**

**JOHN G. KOELTL, District Judge:**

    The defendant, Binani Cement Limited ("Binani"), moves to vacate a maritime Order of Attachment and Garnishment ("Order of Attachment") issued by this Court pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure in favor of the plaintiff, Great Eastern Shipping Co., Ltd. ("Great Eastern"). Binani moves to vacate pursuant to Supplemental Rule E(4)(f), urging that the Court has no maritime jurisdiction over this case. Binani also moves to dismiss Great Eastern's Verified Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.

I

The following facts are undisputed and are taken from the Verified Complaint ("Compl.") and the defendant's affirmation ("Kende Affirm.") unless otherwise indicated.

The plaintiff, Great Eastern, is an Indian business, which owns the M/V Jag Ravi. (Compl. ¶¶ 2-3.)  Great Eastern chartered the M/V Jag Ravi to Visa Comtrade (Asia) Limited ("Charterer") to carry coal from Indonesia to India, where the coal was to be delivered to the defendant, Binani, also an Indian business (this type of maritime contract is referred to as a "Charter Party"). (Compl. ¶¶ 4, 6.)  On September 24, 2008, the M/V Jag Ravi loaded the coal in Indonesia. (Compl. ¶ 7.)  On or about October 1, 2008, five bills of lading were issued by or on behalf of Great Eastern to the shipper, P.T. Harkat Utama Mulia Mandiri ("Shipper"). (Compl. ¶ 8.)  A bill of lading is a receipt indicating that a carrier has received goods from a shipper; it also serves as title to the goods.  See Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 18-19 (2004); Oak Harbor Freight Lines, Inc. v. Sears Roebuck, & Co., 513 F.3d 949, 953 n.2 (9th Cir. 2008).  The consignee (the party to whom the goods were to be delivered) named in the bills was "to order" and the parties to be notified were the Oriental Bank of Commerce and Binani. (Compl. ¶ 8.)

Before the M/V Jag Ravi arrived in India, Binani provided a letter of indemnity ("LOI") to Great Eastern dated October 6, 2008. (Compl. ¶ 9.) The LOI indicated that Binani had not yet received the bills of lading in India and requested that Great Eastern nevertheless deliver the coal. (Compl. Ex. 2 at 1.) "In consideration" for Great Eastern's compliance, Binani promised to indemnify Great Eastern against "any liability, loss, damage or expense of whatsoever nature" that it may incur "by reason of delivering the cargo in accordance with [Binani's] request." (Compl. Ex. 2 at 1.) It also promised to "provide on demand such bail or other security as may be required . . . to secure the release" of a ship arrested in connection with the delivery of the cargo per Binani's terms. (Compl. Ex. 2 at 2.) Offering the LOI in lieu of presenting the bills of lading at delivery was consistent with the Charter Party, which provided that if the bills of lading were not available, Great Eastern agreed to release the cargo upon presentation of a letter of indemnity. (Compl. ¶ 10.)

On October 7, 2008, the M/V Jag Ravi arrived in India and discharged the coal to Binani without production of the bills of lading. (Compl. ¶ 11.) On November 12, 2008, the Shipper demanded $1,492,626.12 from Great Eastern because Great Eastern had delivered the goods without the bills of lading. (Compl. ¶¶ 12-13.) The Shipper threatened to arrest Great Eastern's

3

ships to secure its claim.  (Compl. ¶ 13.)  The Shipper argued that it still possessed the bills of lading and was never paid for the coal, entitling it to the cargo, not Binani.  (Compl. ¶ 13.)  On June 4, 2009, the Shipper obtained an order of arrest from the High Court of Singapore and Great Eastern's M/V Jag Lyall was arrested.  (Compl. ¶ 15.)  Great Eastern alleges it then provided $2,040,410.98 as security to the Shipper to obtain the release of the M/V Jag Lyall.  (Compl. ¶ 16.)  Pursuant to the LOI, Great Eastern alleges that it then demanded that Binani compensate it for the security paid to the Shipper but Binani refused to pay.  (Compl. ¶ 17, 20.)

On July 8, 2009, Great Eastern filed a Verified Complaint seeking a maritime Order of Attachment against Binani's assets.  On July 14, 2009, this Court issued the Order of Attachment pursuant to Rule B of the Supplemental Rules.  Binani now moves to vacate the Order of Attachment pursuant to Supplemental Rule E(4)(f) and to dismiss the Verified Complaint pursuant to Rule 12(b)(1), urging that this Court lacks subject-matter jurisdiction.

II

A

Once a court issues a maritime attachment order pursuant to Supplemental Rule B, "any person claiming an interest" in the property is entitled to a hearing, at which point the burden is on the plaintiff to show "why the . . . attachment should not be vacated." Fed. R. Civ. P. Supp. R. E(4)(f).  The plaintiff must show it has fulfilled the requirements of Rules B and E, including that it has a "valid prima facie admiralty claim against the defendant" that will support admiralty jurisdiction under 28 U.S.C. § 1333.  Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006); see also Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 268 (2d Cir. 2002).  In this case, only the plaintiff's ability to show a prima facie admiralty claim is contested.

Admiralty jurisdiction is defined by the purpose of the jurisdictional grant.  See Ins. Co. v. Dunham, 78 U.S. (11 Wall.) 1, 24 (1870).  "[T]he fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce." Exxon Corp. v. Cent. Gulf Lines, Inc., 500 U.S. 603, 608 (1991) (internal citation omitted).  Thus, in contract cases such as this one, district courts should make a case-by-case examination of "the subject matter of the . . . contract and determine

whether the services performed under the contract are maritime in nature." Id. at 612; see also Norfolk S. Ry., 543 U.S. at 24; Williamson v. Recovery Ltd. P'ship, 542 F.3d 43, 49 (2d Cir. 2008) ("As the district court correctly found, the contracts at issue here 'were by their terms entered into in connection with [a] maritime commercial venture and are therefore maritime in nature.'"). The decision turns on whether the contract has "reference to maritime service or maritime transactions." Norfolk S. Ry., 543 U.S. at 24.

In this case, Binani argues that the indemnity contract is a mere a promise to pay money on land, not a maritime contract. Binani cites cases purporting to hold that a covenant to pay damages merely related to a maritime transaction is different from a maritime contract itself. It is true that "merely agreeing as surety 'to pay damages for another's breach of a maritime charter is not' a maritime contract." Fednav, Ltd. v. Isoramar, S.A., 925 F.2d 599, 601 (2d Cir. 1991) (holding that promise to contribute for settlement and legal fees was not maritime contract) (citing Kossick v. United Fruit Co., 365 U.S. 731, 735 (1961)). Indeed, courts will not "look to the subject matter of the original contract" to find a maritime connection. See id. at 602. Binani cites a recent case in this District where a contract relating to the off-loading of goods that previously had been moved through maritime commerce was held not

6

to be maritime in nature even though the goods were once subject to a maritime contract. Ocean Star Mar. Co. v. Pac Asia Mineral & Mgmt. Corp., No. 09 Civ. 5318, 2009 WL 2460980, at *4 (S.D.N.Y. Aug. 12, 2009).

However, this case is not the same as those cited by Binani. In this case, the indemnity contract is not maritime in nature simply because the subject matter of the underlying Charter Party is maritime, but rather because the LOI explicitly was entered into to ensure the delivery of the coal cargo. Unlike the contracts in Fednav and Ocean Star, this contract's subject matter was maritime in its own right.

Binani points to Kossick to argue that agreements to pay money merely relating to maritime matters do not provide a basis for admiralty jurisdiction. However, Kossick actually supports Great Eastern's case. In Kossick, a seaman needed medical treatment while serving onboard the defendant's vessel. Kossick, 365 U.S. at 732. The defendant offered to bring the seaman to a public hospital in accordance with his maritime duty of maintenance and cure, but the seaman preferred a private physician. Id. The seaman agreed to treatment at the hospital only after the defendant promised to indemnify him against any harm caused by the hospital. Id. When the seaman later was injured by the hospital and sued the vessel owner for indemnity, the Supreme Court held that because the consideration for the

7

vessel owner's promise was the seaman's "good faith forbearance to press . . . his maritime right to maintenance and cure," the contract was maritime in nature. Id. at 738. This was true even though the right the seaman gave up may have been "erroneous[]." Id.

In this case, Great Eastern's right to refuse delivery of the cargo without presentation of the bills of lading is not contested.[1] It is clear from the language of the LOI itself that its purpose was to induce Great Eastern into discharging the cargo without the presentation of the bills of lading. Binani's "consideration" (Compl. Ex. 2 at 1) on the contract was a promise to pay indemnity; Great Eastern's consideration was the prompt discharge of the cargo, a quintessentially maritime service, in forbearance of its right to demand the bills of lading on discharge, a quintessentially maritime right. Cf. Norfolk S. Ry., 543 U.S. at 27 (holding that bills of lading are maritime contracts so long as they require "substantial carriage of goods by sea"). Therefore, the LOI was maritime in nature. The fact that the indemnity contract is actually a promise to

---

[1] In fact, the Charter Party stipulated that Great Eastern would allow the discharge of cargo without presentment of the bills of lading if it was presented with a letter of indemnity (Compl. ¶ 10.), suggesting that presentation of a letter of indemnity would be required without the bills of lading.
   Binani urges that the bills of lading did not require that the cargo only be unloaded upon presentment of the bills of lading. (Compl. Ex. 1.) Indeed, in a strict sense, Great Eastern could unload the cargo without presentment of the bills of lading, but it would, of course, be liable to the Shipper for any harm that resulted. See Datas Indus. Ltd. v. OEC Freight (HK), Ltd., No. 98 Civ. 6904, 2000 WL 1597843, at *2 (S.D.N.Y. Oct. 25, 2000).

8

pay money cannot be divorced from the overall purpose of the transaction, which was maritime, nor the fact that a maritime right was given up as consideration.  See Deval Denizciliz Ve Ticaret A.S. v. Agenzia Tripcovich S.R.L., 513 F.Supp.2d 6, 9 (S.D.N.Y. 2007) (distinguishing mere promise to pay money from promise to pay money that served as consideration to gain release of maritime cargo from possible lien).  In this case, the LOI was "entered into in connection with [a] maritime commercial venture" and, thus, is a contract that is "maritime in nature."  Williamson, 542 F.3d at 49.  Therefore, the Court has admiralty jurisdiction over a lawsuit alleging breach of that maritime contract. See id. at 49 (holding that "standard" non-compete, nondisclosure, and lease contracts were still maritime contracts because of "nature and character" and connection to "maritime commercial venture"); Deval, 513 F.Supp.2d at 9 (holding that court has admiralty jurisdiction to support attachment because underlying claim was on contract "whose purpose is directly traceable to the presence of cargo onboard a seagoing vessel").

B

It should be noted that even if the indemnity contract were viewed as a "mixed contract" containing maritime and non-maritime components, as Binani urges, the Court still would have

9

admiralty jurisdiction because the principal objective of the contract was maritime commerce, namely the discharge of the coal without the bills of lading. See Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc., 413 F.3d 307, 315 (2d Cir. 2005) (holding that although there were non-maritime elements, court had admiralty jurisdiction because contract was "primarily or principally concerned with maritime objectives"); see also Norfolk S. Ry., 543 U.S. at 24. The fact that the contract also contains an indemnity component does not negate its principal maritime objective.

## CONCLUSION

Great Eastern has shown that it has a prima facie admiralty claim against the defendant. Because the plaintiff's remaining obligations to prove the validity of the Order of Attachment are not contested, the motion to vacate the Order of Attachment is **denied**. For the reasons stated above, the motion to dismiss the plaintiff's Verified Complaint for lack of subject-matter jurisdiction is also **denied**. The Clerk is directed to close Docket No. 9.

**SO ORDERED.**

Dated:   New York, New York
         September 17, 2009

                                          /s/ John G. Koeltl
                                          John G. Koeltl
                                          United States District Judge